UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ADRIENNE SIDDENS, <br><br> Plaintiff, <br><br> v. <br><br> PHILADELPHIA INDEMNITY INSURANCE COMPANY, and REGINE MCCRACKEN <br><br> Defendants. | Case No. 2:20-cv-04007-NKL |

# ORDER

Before the Court are Defendant Philadelphia Indemnity Insurance Company's Motion to Dismiss a Party, Doc. 2, and Plaintiff Adrienne Siddens' Motion to Remand, Doc. 9. For the reasons stated below, Plaintiff's motion to remand is granted.

## I. BACKGROUND

This action arises out of the death of Plaintiff Adrienne Siddens' husband Mr. Randall Siddens. The Complaint states that on May 5, 2019, Mr. Siddens was performing duties for his employer Ultramax by collecting cones along a parkway and placing them in an Ultramax vehicle. Defendant Regine McCracken drove her vehicle into Mr. Siddens, causing his body to fly into the air and land on the front, right side of the Ultramax vehicle. As a result, Mr. Siddens was incapacitated and hospitalized for six months before ultimately dying of his injuries on November 18, 2019.

Defendant McCracken was uninsured. Mr. Siddens had purchased his own uninsured motorist coverage on his personal vehicle through Shelter Mutual Insurance Company ("Shelter Insurance"). On June 25, 2019, Shelter Insurance informed Plaintiff's attorney that it would offer

1

the $50,000 per person uninsured motorist limit for Mr. Siddens' injuries. As part of the settlement, both Terry Siddens as Next Friend of Mr. Siddens—who had not yet died but was incapacitated—and Plaintiff Adrienne Siddens signed a Release Contract entitled "FULL RELEASE OF ALL CLAIMS." In relevant part, the Release Contract provides that Plaintiff does

> release, acquit and forever discharge Shelter Mutual Insurance Company, and each of its agents, employees, officers, servants, successors, heirs, executors, administrators, assigns, directors, and all other persons or entities related to it in any way, and all other persons, firms, corporations, associations, partnerships, or other entities, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of services, expenses, and compensation whatsoever (including, but not limited to, any claims for underinsured motorist coverage on a policy issued by Shelter Mutual Insurance Company, [Mr. Siddens' policy number]), which the Undersigned now have or which may hereafter accrue, on account of or in any way growing out of the accident, casualty or event which occurred on or about the 5th day of May, 2019, in Columbia, Boone County, Missouri.

Doc. 3-2. The Release Contract further provides:

> The Undersigned expressly understand that this is a general release which releases all persons and entities from any and all liability to the Undersigned and is intended not only to release all persons and entities from any and all liability to the Undersigned but also to allow the releasees paying the consideration for this general release to assert contribution claims against any other persons or entities.

*Id*. Defendant Philadelphia Indemnity Insurance Company ("PIIC") did not participate in the settlement negotiations and is not mentioned in the Release Contract.

Because Mr. Siddens was incapacitated, on July 19, 2019, a court hearing was held in the Circuit Court of Boone County Probate Division to approve the $50,000 settlement and release. At the hearing, Plaintiff's counsel provided an overview of the agreement, stating "we're asking that his father be allowed, as his now Next Friend, to sign the release, releasing Shelter . . . There may be additional uninsured motorist coverage that we'll have with the Ultramax vehicle they were using." Doc. 9-5. Later in the proceedings, the Circuit Court of Boone County Judge confirmed this with the parties: "And I would assume, and correct me if I'm wrong, this is not the

2

only potential settlement in regard to this ac—I'm going to use the term accident." *Id*. Plaintiff's counsel again stated, "[t]here's a potential claim for another vehicle that may have [uninsured motorist] coverage that applies. And of course, the work comp claim is a separate-not subject to the jurisdiction of this claim." *Id*. Counsel for Shelter Insurance also responded that "on Shelter's side, there may also be a medical settlement as well—, so this release is just for the uninsured motorist." *Id*. The Judge responded, "[r]ight, and I did look at the order and it is specific." *Id*.

The Circuit Court subsequently entered the Order approving settlement of claims and ordering Terry Siddens as the Next Friend to

> execute a full and complete release of any and all claims of Randall Siddens, and his agents, officers, representatives, servants, successors, heirs, executors, administrators, and assigns, against Shelter Mutual Insurance Company, and its agents, officers, representatives, servants, successors, heirs, executors, administrators, and assigns, and all other persons, firms, corporations, association, partnerships, or other entities, of and from any and all liability, actions, claims, demands, rights or interest, whether known or unknown, which Randall Siddens, now has or may hereafter have in connection with the automobile accident of May 5, 2019, in consideration of the payment set out hereinabove.

Doc. 13-1. The Release Contract was then signed by Terry Siddens as Mr. Siddens' Next Friend and Plaintiff Adrienne Siddens.

During this period, Plaintiff's counsel also sought the name and policy details for the automobile insurance carrier responsible for insuring Mr. Siddens' employer's vehicle. The vehicle was insured by Defendant PIIC, and the Complaint states that on June 13, June 25, and July 16, 2019, Plaintiff's counsel attempted to contact PIIC by notifying them of the uninsured motorist claim, providing them with proof that Defendant McCracken was uninsured, and requesting information on PIIC's uninsured motorist coverage. Failing to receive a response, Plaintiff's counsel sent a demand letter to PIIC on August 13, 2019. On December 2, 2019, PIIC's counsel responded that PIIC had concluded that no uninsured motorist coverage existed for Mr.

Siddens through the employer's policy, because Mr. Siddens was not a named insured under the policy and because the Release Contract with Shelter Insurance fully released PIIC from its rights and obligations under the policy.

On December 6, 2019, Plaintiff Adrienne Siddens filed this action against Defendants PIIC and McCracken in the Circuit Court of Boone County, Missouri. Plaintiff seeks a declaratory judgment regarding PIIC's and Plaintiff's rights and responsibilities under PIIC's uninsured motorist coverage and asserts claims of breach of contract and vexatious refusal to pay against PIIC. Plaintiff claims that by stacking Mr. Siddens' employer's eleven policies providing $1,000,000 in uninsured motorist coverage per vehicle, Plaintiff is entitled to up to $11,000,000 in uninsured motorist coverage. Plaintiff also asserts a wrongful death claim against Defendant McCracken.

On January 10, 2020, PIIC removed this action from state court on the basis of diversity jurisdiction under 28 U.S.C. § 1332 and filed a motion to dismiss Regine McCracken as a fraudulently-joined, non-diverse defendant pursuant to Federal Rule of Civil Procedure 21. On January 16, 2020, Plaintiff filed a motion to remand for lack of subject matter jurisdiction due to lack of diversity, as both Plaintiff and Defendant McCracken are residents of Missouri.

## II. LEGAL STANDARD

A defendant may remove to a federal district court a case filed in state court over which the federal court has original jurisdiction. *See* 28 U.S.C. § 1441(a). A federal district court has diversity jurisdiction if (i) the amount in controversy exceeds $75,000, and (ii) the plaintiffs' citizenship is different from the citizenship of each of the defendants. *See* 28 U.S.C. § 1332(a). "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity

jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). The Court must remand a case over which it lacks subject matter jurisdiction. *See In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010) ("[T]he case should be remanded if it appears that the district court lacks subject matter jurisdiction." (citing 28 U.S.C. § 1447(c))).

If a non-diverse defendant was joined solely to prevent removal of a case from state court, the joinder is fraudulent and will not destroy the court's subject matter jurisdiction. *See Prempro*, 591 F.3d at 620 ("Courts have long recognized fraudulent joinder as an exception to the complete diversity rule. Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." (citations omitted)). However, if a plaintiff has a "colorable" claim against a non-diverse defendant, meaning a reasonable basis in fact and law supporting the claim, joinder is not fraudulent. *Filla v. Norfolk Southern. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) ("[I]f there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." (emphasis in original)). The Eighth Circuit describes the fraudulent joinder standard as one of reasonableness. *Id.* ("A proper review should give paramount consideration to the reasonableness of the basis underlying the state claim."). "In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." *Id.* at 811.

As the party seeking to remove the case, PIIC bears the burden of establishing that the Court has subject matter jurisdiction over this case. *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1192 (8th Cir. 2015). Any doubt concerning whether the Court has jurisdiction "must be resolved in favor of remand." *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).

## III. ANALYSIS [1]

It is undisputed that Plaintiff Siddens and Defendant McCracken are both Missouri citizens, such that diversity jurisdiction does not exist unless McCracken has been fraudulently joined. PIIC argues fraudulent joinder exists here because the Release Contract between Shelter Insurance and Plaintiff operates as a general release of all claims against any party, including McCracken, and therefore Plaintiff has no basis in law for her wrongful death action against McCracken.[2] Plaintiff argues that the Release Contract was not a general release; rather, it only released Plaintiff's uninsured motorist claims against Shelter Insurance, and therefore her wrongful death action against McCracken is proper and diversity jurisdiction does not exist.

State law controls the substantive issues in this diversity case. Under Missouri law, "[i]nterpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement, and the primary rule of construction is that the intention of the parties shall govern." *Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. banc 1993). In making such an assessment,

> [a]ny question regarding the scope and extent of the release is to be resolved according to what may fairly be said to have been within the contemplation of the parties at the time the release was given. This, in turn, is to be resolved in light of all the surrounding facts and circumstances under which the parties acted. However, language that is plain and unambiguous on its face will be given full effect within the context of the agreement as a whole unless the release is based on fraud, accident, misrepresentation, mistake, or unfair dealings.

---

[1] In PIIC's motion to dismiss McCracken as a Defendant, PIIC argues that McCracken should be dismissed pursuant to Federal Rule of Civil Procedure 21 because she was fraudulently joined as a defendant. Because this is also PIIC's basis for opposing Plaintiff's motion to remand, the two motions are considered together.

[2] PIIC also contends that because the Release Contract bars Plaintiff's claims against any party, it also bars Plaintiff's claims against PIIC, but states that it will assert this defense to its own liability in a dispositive motion.

*Id.*

The parties dispute the scope of the release here and whether it constitutes a general release of all claims against any party, including McCracken. "If a release states that it releases 'all claims' against 'any and all persons,' or similar language, it may operate as a general release, and effectively extinguish claims against all tortfeasors, even those who were not parties to the release." *Lunceford v. Houghtlin*, 170 S.W.3d 453, 460 (Mo. Ct. App. 2005). "A general release disposes of the whole subject matter or cause of action involved." *Blackstock v. Kohn*, 994 S.W.2d 947, 954 (Mo. banc 1999) (internal quotations omitted).

Missouri courts have found language similar to that in Plaintiff's Release Contract to be an unambiguous general release. *See, e.g., McIntire v. Glad Heart Properties*, 399 S.W.3d 505, 509 (Mo. Ct. App. 2013) ("[T]he plain language of the release provision unambiguously releases not only [the signatory tortfeasor] but also 'all other persons, firms and/or entities from any and all claims' arising out of both the sale and inspection of the property. This language, if read in isolation, would cover [the defendants]."); *Holmes v. Multimedia KSDK, Inc.*, 395 S.W.3d 557, 560 (Mo. Ct. App. 2013) ("[A] release that releases claims against 'any and all persons' is unambiguous and enforceable to bar claims against third parties who were not parties to the release, and it is not necessary that the release identify those persons by name or otherwise."); *Penrod v. Branson R-IV Pub. Sch. Dist.*, 916 S.W.2d 866, 868 (Mo. Ct. App. 1996) (quoting *Clayton Plaza Int'l Leasing Co., Inc. v. Sommer*, 817 S.W.2d 933, 936 (Mo. Ct. App. 1991)) ("Language typically seen in [general releases] release not only the other party to the release, but also 'all other persons, firms or corporations . . .'; or 'all my claims of every nature and kind whatsoever arising out of the accident,'; or finally 'any other person, firm or corporation charged or chargeable with responsibility for liability ... from any and all claims.'" (internal citations omitted)); *Hawes v.*

*O.K. Vacuum & Janitor Supply Co.*, 762 S.W.2d 865, 866–68 (Mo. Ct. App. 1989) (finding the release language stating "I do hearby release and forever discharge [the signatory tortfeasor] and any other person, firm or corporation charged or chargeable with responsibility or liability" to be "general and unambiguous" and standing alone "would extinguish plaintiff's cause of action against defendants."); *but see Bailey v. Aetna Cas. & Sur. Co.*, 497 S.W.2d 816, 820 (Mo. App. 1973) (finding that where plaintiff settled a tort claim and executed an agreement releasing the tortfeasor "and any and all other persons, firms and corporations," "[i]t would require a degree of judicial agility, of which we are incapable, to read into this Release any intention on the part of plaintiff to release her claim for medical expenses against [defendant auto insurer] under its policy of insurance" where the insurer was not a party to the settled litigation, was not "privy to the defendant tort-feasors," and the settled claim was "in tort as distinguished from the present claim on contract asserted against [defendant auto insurer].")

However, Plaintiff argues that the parties did not intend a general release of all claims against any non-settling party, and that the intent of the parties should govern here. Plaintiff submits the transcript of the state court settlement hearing approving the settlement release, in which the Judge, Plaintiff's counsel, and Shelter Insurance's counsel all discussed an expectation that Plaintiff intended to pursue additional claims, as well as an affidavit from Shelter Insurance counsel Chris Rackers stating that "[i]t was Shelter's intent to have Randall Siddens release <u>only</u> Shelter Mutual Insurance Company and its affiliated people and entities." Doc. 9-4, p. 2 (emphasis in original). Plaintiff asserts that neither McCracken nor PIIC were parties to the Release Contract, they did not contribute consideration, and they did not have knowledge of the settlement, and PIIC as a "non-party to the contract is attempting to misconstrue the intent of the actual parties in an

attempt to confuse this Court and gain unjust enrichment for itself by adding in an intent that was never anticipated by either party to the contract." Doc. 10, p. 3.

PIIC responds that in light of the unambiguous general release, the parol evidence rule bars the Court from considering Plaintiff's extrinsic evidence in order to interpret the Release Contract. *See Holmes*, 395 S.W.3d at 559 ("In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits the court from considering extrinsic evidence contradicting the terms of the agreement, unless the terms of the agreement are themselves ambiguous.")

The Supreme Court of Missouri confronted a similar disjuncture between release contract language and the intent of the parties when determining whether a general release in a settlement agreement signed by a plaintiff releasing the original tortfeasor and his insurer from liability for the Plaintiff's injuries also operated to release the physician who allegedly negligently treated those injuries. *State ex rel. Normandy Orthopedics, Inc. v. Crandall*, 581 S.W.2d 829, 830 (Mo. banc 1979). The general release stated that "This is a Release in Full" and that the Plaintiff released the original tortfeasor "and any and all other persons, firms, and/or corporations whomsoever from any and all liability now accrued or hereafter to accrue on account of any and all claims or causes of action which First Party . . . now has or may hereafter have against [the original tortfeasor] . . . and any and all other persons, firms and/or corporations whomsoever, in any way arising from or out of any and all injuries, losses and damages now known or that may hereafter develop." *Id*. at 831. The defendant physician argued that the parol evidence rule barred the court from considering the plaintiff's affidavits stating that the settling parties had only intended to release the original tortfeasor and insurer and that the consideration received was not in full satisfaction of the damages, because it would alter the terms of the general release. *Id*. at

9

834. The Supreme Court of Missouri found that the evidence of intent would not necessarily alter the terms, because physician defendants

> are nowhere listed by name in its provisions and it is they who seek inclusion within its terms on the basis of Their interpretation of its language. Plaintiff vigorously advances a different interpretation of that language and each side urges a resolution of the inherent ambiguities in a manner favorable to his position. We have hereinbefore determined to dispel the legal presumptions previously indulged in the law as to language of the sort at issue here, and parol evidence could well be of value in resolving the issue.

*Id*. Therefore, given the evidence that Plaintiff had not intended the prior settlement to release all claims against the physicians or to provide full satisfaction of the injuries, consideration of parol evidence was permitted.

Thus, although *Crandall was* decided in the context of successive tortfeasors, it is analogous. Here, as in *Crandall*, the Court has been presented with general release language as well as evidence indicating that neither settling party intended to release all claims against all non-settling parties. Under *Crandall*, consideration of parol evidence to construe the release may be appropriate, and the parol evidence here suggests the settling parties intended to release only Shelter Insurance from the uninsured motorist claim. *But see McIntire*, 399 S.W.3d at 509 n. 3 (describing *Crandall* as a possible "exception[] to [the] general rule" that "[a]bsent ambiguity within the language of the document, parol evidence is generally inadmissible.")

Further, the parol evidence rule only applies "[i]n the absence of fraud, accident, mistake, or duress . . . ." *Rosenfeld v. Boniske*, 445 S.W.3d 81, 87 (Mo. Ct. App. 2014). Under Missouri law, the equitable remedy of "[r]eformation may properly be granted when a mutual mistake of law prevents a written instrument from expressing the parties' actual intentions, which occurs when parties erroneously suppose that the words used in an instrument are legally effective to secure a certain result." Hunter v. Moore, 486 S.W.3d 919, 926 (Mo. banc 2016) (internal

quotations omitted). *See also King v. Riley*, 498 S.W.2d 564, 566 (Mo. 1973) ("Equity will reform an instrument which, through mutual mistake of the parties, does not accurately set forth the terms of the agreement actually made or which does not incorporate the true prior intentions of the parties.") For example, in *Lunceford*, a Missouri Court of Appeals found that while a settlement release between an injured party and his insurance provider contained unambiguous general release language releasing "all other persons, firms, associations, and corporations," the parties had presented evidence that the release incorrectly memorialized the intended scope of that release and had subsequently attempted to correct the release. *Lunceford*, 170 S.W.3d 453 at 458. This evidence was sufficient to present a genuine issue of material fact as to reformation, such that the tortfeasor defendant would be unable to prevail on the affirmative defense of release. *Id.* at 465. Similarly, here, Plaintiff presents evidence that the parties did not intend to execute a general release of all claims against all parties. This may prove to be a sufficient basis for reformation of the Release Contract. *See also Lunceford v. Houghtlin*, 326 S.W.3d 53, 81 (Mo. Ct. App. 2010) (affirming a trial court's judgment that a release should be reformed in accordance with the parties' intent, finding that "[n]egating [defendant's] third party beneficiary status by reformation of the Release is not an inequitable result. The Release gave the [defendants] a 'free ride' without their knowledge, their consent, or their payment of any consideration in so far as the [plaintiffs] were concerned.")

In short, while PIIC ultimately may be correct that Plaintiff released all claims against McCracken, the Court cannot say Plaintiff has no colorable claim against McCracken. On a motion to remand, the Court's consideration is limited to whether a Missouri court "*might* impose liability on the resident defendant." *Filla*, 336 F.3d at 810 (emphasis in original). "When the Court cannot definitively determine that [Plaintiff's] chosen course is prohibited by state law, 'the

11

better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide.'" *Clune v. Missouri Highways & Transportation Comm'n*, No. 17-0965-CV-W-BP, 2018 WL 3301206, at *2 (W.D. Mo. Jan. 18, 2018) (quoting *Filla*, 336 F.3d at 811). "That is as far as this Court's analysis goes, because 'the court may not step from the threshold jurisdictional issue into a decision on the merits.'" *New Prime, Inc. v. Daimler Trucks N. Am., LLC*, No. 09-3476-S-CV-DW, 2010 WL 11619550, at *2 (W.D. Mo. Jan. 26, 2010) (quoting *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3rd Cir. 1990)).

The Court thus concludes that Plaintiff has presented a colorable claim for relief against Defendant McCracken, and therefore McCracken has not been fraudulently joined and diversity jurisdiction is absent. Plaintiff's motion to remand this action to state court is granted.

IV. **CONCLUSION**

For the reasons stated above, Plaintiff's motion to remand is granted. This case is remanded to the Circuit Court of Boone County, Missouri for all further proceedings.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 30, 2020
Jefferson City, Missouri